UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RUTHANN RICHARDSON,

                    Plaintiff,

      v.                                 **DECISION AND ORDER**
                                                 13-CV-377S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

       1.      In this action, Plaintiff Ruthann Richardson challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act").

       2.      On September 27, 2010, Richardson filed an application for Disability Insurance Benefits ("DIB") under Title II of the Act, claiming she was unable to work since July 13, 2006 because of carpal tunnel syndrome, injuries to her arms, shoulders, and neck, depression, and anxiety. (R. 119-20, 138.)[1] Her application was denied on September 21, 2010. (R. 55-62.) Richardson then requested a hearing, which was held before ALJ David Lewandowski on November 15, 2011. (R. 22-47.) Richardson was represented by counsel at the hearing, at which she appeared in person and testified. (Id.) Prior to giving testimony, Richardson amended her disability onset date to June 23, 2008. (R. 25-27.)

       3.      The ALJ considered her DIB application *de novo* and, on January 9, 2012, issued a written decision finding Richardson was not disabled. (R. 6-21.) Richardson

---

[1] Citations to the administrative record are designated as "R."

requested review by the Appeals Council, which denied the request on March 12, 2013. She commenced this civil action on April 16, 2013, challenging the Commissioner's final decision.[2]

4.     On January 16, 2014 and January 24, 2014, respectively, Richardson and the Commissioner each filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 7 and 9.) The motions were fully briefed on February 21, 2014, at which time this Court took the matter under advisement.  For the reasons set forth below, the Commissioner's motion is granted and Richardson' motion is denied.

5.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's November 15, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

6.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8.     The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which

is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9.     Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.     In this case, the ALJ made the following findings with regard to the five-step process: (1) Richardson had not engaged in substantial gainful activity since July 13, 2006, the initial alleged disability onset date (R. 11); (2) her mild disc and degenerative changes in the cervical spine, cervical radiculopathy to the bilateral shoulders and hands, lumbar spine pain, and headaches were severe impairments within the meaning of the Act (id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R.

13); (4) Richardson had the residual functional capacity ("RFC") to perform light work with the exception that she could not reach overhead and must avoid bright lights and noise similar to heavy traffic (id.); (5) she was not able to perform her past relevant work (R. 16); and (6) jobs existed in substantial number in the national economy that an individual of her age, education, past relevant experience, and RFC could perform (R. 16-17).

11.     Richardson contends the determination that she is not disabled is not supported by substantial evidence and is based on multiple errors of law. In particular, she maintains the ALJ erroneously failed to give controlling weight to the opinions of her treating physicians, fully develop the record, properly assess her credibility, and properly apply the Medical Vocational Guidelines in making the disability determination.

12.     Under the "treating physician's rule," the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2)[3]; see also Green-Younger v. Barnhart, 335 F.3d 99 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). Richardson, who saw several physicians for pain in her neck and upper extremeties,[4] contends it was reversible error for the ALJ to dismiss "the opinions

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." DeRoman v. Barnhart, No. 03-CV-0075, 2003 U.S. Dist. LEXIS 11217, at * 32 (S.D.N.Y. July 2, 2003).  Effective March 26, 2012, the Commissioner amended §§ 404.1527 and 416.927. 77 FR 10651, 10656. This opinion refers to regulations in effect when the ALJ adjudicated this claim.

[4] The record contains treatment notes from Andrew Hilberger, a neurologist, dated June 18, 2007 through July 15, 2009 (R. 206-48); Raja Kolisetti, Richardson's primary care physician, dated March 7, 2008 through September 12, 2011 (R. 253-75, 394-404); Dr. Jin Y. Chang, who administered epidural steroid injections for pain in March 2009 and September 2010 (R. 354-60); Dr. Naren Kansal, a neurological

of total disability from Dr. Kolisetti, Dr. Chang, and Dent Neurological," which illustrate "her inability to perform a full range of sedentary work." (Docket No. 7 at 10.)

13.    Dr. Kolisetti was Richardson's primary care physician and the record includes his treatment notes from March 3, 2008 to September 12, 2011. In 2011, he reported to the New York Workers' Compensation Board that Richardson suffered from cervicalgia, headache, and depressive disorder, and was 100% disabled from working due to pain. (R. 394-95, 398-99.) The ALJ acknowledged Dr. Kolisetti's opinion, but found it was inconsistent with Kolisetti's examination findings, which consistently noted that Richardson's neck was supple, with full range of motion, but she had "discomfort on ROM, bilateral wrists, elbows, neck," and, on occasion, the shoulders and/or lumbar spine.[5] (R. 253, 254, 256, 257, 259, 260, 261, 262, 263-75.) As for objective findings, Dr. Kolisetti reported that a 2009 EMG/NCS test of Richardson's right arm was normal, 2007 x-rays of the left and right shoulders were unremarkable, a 2007 MRI of the cervical spine showed minimal C6-7 degenerative changes, 2006 x-rays of the left and right elbow and left and right shoulder were all unremarkable, and there was a showing of mild C4-5 disc space narrowing of the cervical spine. (e.g., R. 253.) The ALJ expressly found Dr. Kolisetti's opinion of total disability also was "inconsistent with the fact that claimant was going to school on a full-time basis, taking 12 credits, majoring in Business and Tourism." (R. 16; see also, 254-71.)

---

surgeon, who evaluated Richardson on May 12, 2009 (R. 300); and Dr. Lixin Zhang, of Dent Neurologic Institute, dated July 10, 2009 through July 27, 2011 (R. 362-393).

[5] In 2011, Dr. Kolisetti noted "pain [rather than "discomfort"] on ROM shoulders, neck," but also indicated there was "no change" with regard to Richardson's symptoms. (R. 396, 400.)

Dent Neurological reported to the New York Workers' Compensation Board that Richardson was 100% and, more recently, 75% disabled. The ALJ first noted that a different standard applies to workers' compensation assessments. Using the standards applicable to Social Security disability determinations, the ALJ observed that Dent's assessments "seem[ed] inconsistent with the medical record" because examination findings were generally good. In particular, he concluded that Dent's examination findings on April 25, 2011, January 26, 2011, and December 15, 2010 did not support a finding of disability. (R. 16.) Among other things, those records note that Richardson had normal and/or age appropriate muscle tone and bulk, gait and station, coordination, and mental status. On December 15, 2010 and January 26, 2011, Dent did document "a decrease in the ROM of the neck with extension, side bending and right and left rotation" and decreased strength in the right hand grip (R. 379, 382), but all conditions were normal or improved on April 25, 2011 (R. 369). The ALJ concluded that the Dent "doctors appear to be finding disability mainly based on the claimant's subjective complaints." (R. 16.)

As for Dr. Chang, there is no indication in the record that he gave any opinion or assessment regarding Richardson's physical abilities and limitations. The ALJ's decision simply notes that:

> the claimant had received a series of cervical epidural steroid injections beginning on September 29, 2010 (Exhibit 12F, page 1). The claimant said she was doing much better. Dr. Chang discharged her from treatment because she was doing much better.

(R. 16.) Richardson does not explain how the ALJ erred regarding Dr. Chang.

A treating physician's opinion need not be given controlling weight where the opinion is not well-supported by clinical and laboratory diagnostic tests and techniques

and is not consistent with other substantial record evidence. Here, the ALJ discussed Richardson's test results, the examination findings of her treating sources, examination reports from an independent medical source and a consultative physician, and a functional report Richardson prepared and submitted. Having reviewed the record, the Court finds the ALJ did not commit legal error in declining to give controlling weight to Dr. Kolisetti's and Dent Neurologic's opinion that Richardson was disabled. His decision regarding her residual functional capacity is supported by substantial evidence.

14.     Richardson also contends the ALJ did not properly develop the administrative record. The regulations in effect during the relevant period provided:

> (d) Our responsibility. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision . . . [and] will first recontact your treating . . . medical source to determine whether the additional information we need is readily available.

20 C.F.R. §§ 404.1512(d) and (e) (2011).[6] According to Richardson, neither of these obligations was satisfied.

With regard to paragraph (d), the record contains Richardson's medical history for more than two years prior to her filing date of September 27, 2010. She does not state how the record was deficient and there is no indication that records received from

---

[6] Effective March 26, 2012, the Commissioner amended § 404.1512, removing paragraph (e) from the regulations. 77 FR 10651, 10655.

her treating physicians and other medical sources are incomplete. As to paragraph (e), Richardson does not explain what missing information was necessary to the ALJ's disability determination. It is well established in this Circuit that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation omitted). Contrary to Richardson's assertion, § 404.1512(e) does not impose an "absolute obligation to recontact said physicians to seek clarification" where an ALJ declines to give controlling weight to treating physicians' opinions. (Docket No. 7 at 14.)

15.     Next, Richardson maintains the ALJ erred when he concluded that her testimony regarding pain and depression was not entirely credible, particularly in light of her compliance with prescribed treatment and her exemplary work history. She contends the ALJ was improperly fixated on her Workers' Compensation claim, suggesting she was pursuing financial gain.

Social Security Ruling 96-7p requires that "[t]he [ALJ's] determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 SSR LEXIS 4, at *3-4 (SSA July 2, 1996). Here, the ALJ concluded that Richardson's allegations of disabling pain and depression were inconsistent with earlier statements regarding her daily activities and the medical record.   In particular, the ALJ summarized a Function Report Richardson

completed in July 2010, where she stated that it hurt when she engaged in most physical activities and she could not lift heavy objects such as a full laundry basket or heavy pots and pans. But she went on to report that, except where heavy lifting was required, she did housework, laundry, and yard work, prepared meals daily, grocery shopped once or twice a week, drove a car, took care of family pets, did art and craft projects, and attended to her personal care. (R. 146-55.) Richardson reported to her doctors, and stated at the hearing, that her prescribed medication helped her symptoms and she did not experience side effects. (R. 39-40, 154, 296, 354, 390.) As discussed above, the ALJ also reviewed Richardson's objective test results and treatment records. Although a claimant's adherence to prescribed treatment and/or a lengthy work history generally lend support to allegations of intense pain or other symptoms, it is the ALJ's prerogative to weight "the credibility of the claimant's testimony in light of the other evidence in the record." <u>Genier v. Astrue</u>, 606 F.3d 46, 49 (2d Cir. 2010). This Court finds no error here, where the evidence supports the ALJ's determination that the persistence and intensity of Richardson's pain and depression did not prevent her from performing light work with specified non-exertional limitations.

16.     In her final arguments, Richardson contends the ALJ committed legal error at step five of the process, where he was to consider her RFC and vocational factors to determine whether she can perform other work. 20 C.F.R. §404.1520(g). First, Richardson urges that the ALJ's failure to follow the treating physician's rule renders the ultimate disability determination erroneous, as well. Having found the ALJ did not err in his consideration of opinion evidence, this argument is rejected. Next, Richardson maintains the ALJ erred in applying Rule 202.21 of the Medical-Vocational Guidelines,

which requires the ability to do a full range of light work, which she is unable to do. This appears to be a simple misreading of the decision, in which the ALJ clearly stated that:

> <u>If</u> the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. <u>However</u>, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the undersigned asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

(R. 17 (emphasis added).) In short, because the ALJ found Richardson has non-exertional limitations that prevent her from reaching overhead and require that she avoid bright lights and noise, he did precisely what was required; he did not rely on the Guidelines, and instead sought testimony from a vocational expert. <u>Bapp v. Bowen</u>, 802 F.2d 601, 605 (2d Cir. 1986). The hypotheticals presented to the vocational expert were based on Richardson's RFC and vocational profile.

17.     There is one further matter to consider. Though not set out prominently in her brief, Richardson correctly points out that, after the ALJ allowed her to amend her disability onset date (from July 13, 2006 to June 23, 2008), he referred in his decision to her initial onset date, some two years prior. Richardson suggests, without citation to any authority, that this may render the analysis erroneous as a matter of law. The Court need not delve into this question. There is no indication that the decision is based on evidence predating the amended disability onset date, except to the extent the results of earlier diagnostic tests were included in her treating physician's more recent files as part of a longitudinal record of Richardson's injuries and symptoms. In short, there is no

indication that use of the amended onset date might have resulted in a different determination, and any purported error was harmless.

* * * * *

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:  July 3, 2014
          Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court